In the Matter of Disciplinary Proceedings Against James E. Hammis, Attorney at Law:

Office of Lawyer Regulation,
Complainant-Respondent-Cross-Appellant,

v.

Frederick J. Hammis,
Respondent-Appellant-Cross-Respondent.

Supreme Court

*No. 2009AP468–D. Oral Argument September 14, 2010.
—Decided January 20, 2011.*

2011 WI 3

(Also reported in 793 N.W.2d 884.)

For the complainant-respondent-cross-appellant there were briefs by *Robert G. Krohn* and *Roethe Pope Roethe LLP*, Edgerton, and oral argument by *Robert G. Krohn*.

For the respondent-appellant-cross-respondent there were briefs by *Lester A. Pines* and *Cullen Weston Pines & Bach LLP, Madison, and oral argument by Lester A. Pines.*

¶ 1. PER CURIAM. Attorney James E. Hammis appeals a report filed by Referee Lisa Goldman on January 7, 2010, concluding that Attorney Hammis committed 10 of 13 alleged counts of professional misconduct, recommending this court suspend him for a period of four months, and recommending imposition of costs. Attorney Hammis does not appeal the referee's findings or conclusions of law but seeks a shorter suspension. The Office of Lawyer Regulation (OLR) cross-appeals contending the referee should not have recommended dismissal of one of the disciplinary counts and seeks a longer suspension. The court heard oral argument in this matter on September 14, 2010.

¶ 2. Attorney Hammis was admitted to practice law in Wisconsin in 1988. He has not previously been disciplined. He currently practices in Stoughton, Wisconsin. The allegations contained in the OLR complaint pertain to alleged misconduct involving two clients, practicing law while administratively suspended, and Attorney Hammis' subsequent failure to cooperate with the OLR investigation. On February 24, 2009, the OLR filed a 13–count complaint against Attorney Hammis alleging misconduct related to Attorney Hammis' representation of S.H. in a parole revocation matter (Counts 1 through 3); billing anomalies related to the representation of S.H. (Count 4); practicing law and/or misrepresenting his status while under suspension (Counts 5 through 8); failing to respond to the OLR (Count 9); and Attorney Hammis' representation of V.T. (Counts 10 through 13). Attorney Hammis admitted six of the 13 charges (Counts 2, 5, 7, 8, 9, and 12). He contested the

other seven allegations. The referee conducted the evidentiary hearing on September 10, 2009, and rendered her report and her recommendation for a four-month suspension.

¶ 3. The issues on this appeal involve the appropriate discipline and whether the referee should have recommended dismissal of one of the charges. Thus, the parties do not dispute the referee's factual findings and we agree that the record supports those findings.

¶ 4. Attorney Hammis accepted an appointment from the Office of the State Public Defender (SPD) to represent S.H. in a parole revocation matter on February 8, 2007. Attorney Hammis provided S.H. with a copy of the revocation materials and met with S.H. twice prior to the revocation hearing. During one of these meetings S.H. told Attorney Hammis that he believed he had a potential sentence credit issue. At the revocation hearing, Attorney Hammis requested additional time to investigate the possible sentence credit issue.

¶ 5. On or about May 8, 2007, S.H. sent a letter to Attorney Hammis specifically asking Attorney Hammis for the case file if Attorney Hammis was not going to assist S.H. with the sentence credit issue.

¶ 6. Attorney Hammis responded in a letter dated May 26, 2007, advising S.H. that the sentence credit issues were beyond the scope of his appointment and that S.H. should contact the SPD for further assistance.

¶ 7. S.H. testified that he never received this letter. S.H. then sent Attorney Hammis a written request for his complete file. Attorney Hammis did not respond to this request. On July 15, 2007, S.H. filed a grievance with the OLR regarding Attorney Hammis' representation. The OLR duly sent Attorney Hammis a letter regarding this grievance that stated in the event Attorney Hammis was still representing S.H. that he notify S.H. regarding the status of the representation

and send a copy of such letter to the OLR. Attorney Hammis did not respond to this or to several subsequent written requests for information from the OLR.[1]

¶ 8. After terminating his representation of S.H., Attorney Hammis billed the SPD for his work on this file. The SPD challenged Attorney Hammis' billing records in the S.H. matter and in 93 other cases he handled for the SPD. Eventually, at the SPD's direction, Attorney Hammis conducted an audit of some 63 cases he had handled for the SPD. Attorney Hammis eventually admitted that he had billed the SPD for work on S.H.'s case, including an appeal, that he did not actually perform.[2]

¶ 9. Meanwhile, Attorney Hammis failed to comply with his continuing legal education (CLE) requirements. By letter dated March 30, 2007, Attorney Hammis was notified by the Board of Bar Examiners (BBE) that he would be automatically suspended from the practice of

---

[1] On December 17, 2007, the OLR filed a motion with this court seeking an order to show cause as to why Attorney Hammis' law license should not be suspended for failing to cooperate with the investigation. Attorney Hammis then responded. He provided the OLR with S.H.'s entire file on January 9, 2008. The OLR withdrew its motion for a temporary suspension.

[2] Counsel for the SPD testified she thought Attorney Hammis' billing was "out of control." He "was repeatedly billing more than 15 hours in a single day." Attorney Hammis later admitted that approximately half of the 63 files he audited contained billing "errors."

The SPD and Attorney Hammis entered into a settlement regarding these billing anomalies and Attorney Hammis was directed to remove himself from the list of eligible private bar attorneys accepting SPD appointments. The billing anomalies in other cases are not part of the disciplinary matter presently before the court.

23

law at 4:30 p.m. on May 29, 2007, if he did not comply with CLE reporting requirements. Attorney Hammis failed to comply and was administratively suspended. On June 1, 2007, Attorney Hammis personally signed for a certified letter from the BBE which notified Attorney Hammis of this suspension.

¶ 10. Attorney Hammis continued to practice law after receiving notice of his administrative suspension. He appeared in several client criminal matters after May 29, 2007, in violation of his suspension.

¶ 11. On June 8, 2007, while his license was under administrative suspension, Attorney Hammis appeared before the Honorable Randy Koschnick in a Jefferson County case. Judge Koschnick had heard that Attorney Hammis had been administratively suspended. Before the scheduled hearing he asked Attorney Hammis if this had been resolved. Attorney Hammis claimed he had cleared up the matter the previous afternoon. Based on Attorney Hammis' misrepresentation, Judge Koschnick allowed Attorney Hammis to proceed with the scheduled hearing.

¶ 12. Later that same day, Attorney Hammis registered and signed in for a 3 1/2 hour CLE class titled, "Agricultural and Business" at the Wisconsin State Bar Center. This class was scheduled to begin one hour from the time Attorney Hammis arrived at the center. Attorney Hammis then left the State Bar Center and drove to the BBE office to file his petition for reinstatement. The petition for reinstatement stated that Attorney Hammis had completed the "Agricultural and Business" class when, in fact, the course had not begun at the time Attorney Hammis filed his petition with the BBE. Attorney Hammis then traveled to a meeting in Portage, Wisconsin, and did not return to the CLE course until after 2:15 p.m. The BBE denied Attorney Hammis' petition for reinstatement because it ascertained he had

filed his petition prior to completion of the necessary CLE course.

¶ 13. On June 12, 2007, Attorney Hammis did complete a two-credit CLE course. On June 13, 2007, he filed a second petition for reinstatement. In his second petition he affirmed he had not practiced law during his administrative suspension and claimed that he had instructed his office to continue matters that were scheduled for the weeks of June 4, 2007, and June 11, 2007, while he was suspended. The reinstatement petition failed to disclose that Attorney Hammis had actually appeared on behalf of six separate clients during his suspension, including the plea hearing before Judge Koschnick. Attorney Hammis also failed to notify clients, courts, and opposing counsel in pending matters of his administrative suspension between May 30, 2007, and June 14, 2007. The BBE, Judge Koschnick, and the SPD each separately notified OLR that Attorney Hammis had appeared in court while suspended. Attorney Hammis then failed to respond to multiple OLR inquiries regarding these allegations.

¶ 14. Following an investigation the OLR filed a 13–count complaint against Attorney Hammis. As noted, Attorney Hammis conceded some of the allegations and contested others. On this appeal the only charge that remains in dispute is Count 11.

¶ 15. Count 1 of the OLR complaint alleged that by failing to communicate with S.H. between May and December of 2007, Attorney Hammis violated former SCR 20:1.4(a)[3] and current SCR 20:1.4(a)(3) and (4).[4]

---

[3] Former SCR 20:1.4(a) (effective through June 30, 2007) stated, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[4] SCR 20:1.4(a)(3) and (4) provides that a lawyer shall "(3)

¶ 16. Attorney Hammis contested this allegation in proceedings before the referee. The referee found that Attorney Hammis had sent S.H. a closing letter on May 26, 2007, although it appears S.H. did not receive the letter. The referee thus concluded that OLR had failed to meet its burden as to Count 1 and recommended dismissal of this charge. OLR does not appeal this conclusion.

¶ 17. Count 2 alleged that Attorney Hammis violated SCR 22.03(2),[5] made actionable via SCR 20:8.4(h),[6] by his failure to respond to numerous requests for information from the OLR. Attorney Hammis conceded the ethical violations described in Count 2.

keep the client reasonably informed about the status of a matter;" and "(4) promptly comply with reasonable requests for by the client for information; . . . ."

[5] SCR 22.03(2) states:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[6] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

¶ 18. Count 3 alleged that Attorney Hammis violated former and current SCR 20:1.16(d)[7] by failing to provide S.H. with a copy of his file upon request or take appropriate steps after termination of his representation. The referee noted that on May 2, 2007, S.H. specifically requested that Attorney Hammis forward all transcripts and revocation materials to S.H. Attorney Hammis testified that S.H. already had his entire file. However, the referee noted that nothing in the record indicated that Attorney Hammis advised S.H. or the OLR that he believed S.H. already had his entire file. Therefore, whether or not S.H. had his entire file, S.H. was left with the impression that Attorney

---

[7] Former SCR 20:1.16(d) (effective through June 30, 2007) provided:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Current SCR 20:1.16(d) (effective July 1, 2007) provides as follows:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Hammis had failed to provide him with documents he thought he needed to pursue his sentence credit issue.

¶ 19. On January 7, 2008, nearly six months later, Attorney Hammis provided OLR with a copy of the entire S.H. file. Attorney Hammis later admitted that he never provided S.H. with a copy of his entire file or sent a letter responding to the file request. Thus, the referee concluded that Attorney Hammis' conduct violated SCR 20:1.16(d). Attorney Hammis did not appeal this conclusion.

¶ 20. Count 4 of the OLR complaint alleged Attorney Hammis violated SCR 20:8.4(c)[8] by billing the SPD for work he did not perform in S.H.'s case. Attorney Hammis' billing statement included an entry for 2.8 hours to draft and file an appeal as well as an entry to obtain and review a transcript and a reference to a letter to S.H. outlining the transcript. Attorney Hammis did not actually draft or file an appeal for S.H. or send this letter. The referee concluded that the OLR had showed by clear, satisfactory, and convincing evidence that Attorney Hammis violated SCR 20:8.4(c) by engaging in a repeated pattern involving dishonesty when he overbilled the SPD on this case. Attorney Hammis does not appeal this conclusion.

¶ 21. Turning to the allegations related to practicing law while under suspension, the OLR complaint alleged in Count 5 that by failing to comply with CLE attendance requirements, and for appearing in court on behalf of several clients after he knew his license had been suspended for failing to comply with CLE require-

---

[8] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

ments, Attorney Hammis violated SCR 31.10(1),[9] made actionable by former SCR 20:8.4(f).[10]

¶ 22. Attorney Hammis conceded the misconduct alleged in Count 5 of the complaint. Despite his notice and his acceptance of a certified letter from the BBE on June 1, 2007, Attorney Hammis decided to appear in multiple courts for clients while he was suspended.

¶ 23. Count 6 of the complaint alleged that Attorney Hammis lied to Judge Koschnick on June 8, 2007, about his suspension status and proceeded to appear

---

[9] SCR 31.10(1) provides:

If a lawyer fails to comply with the attendance requirement of SCR 31.02, fails to comply with the reporting requirement of SCR 31.03(1), or fails to pay the late fee under SCR 31.03(2), the board shall serve a notice of noncompliance on the lawyer. This notice shall advise the lawyer that the lawyer's state bar membership shall be automatically suspended for failing to file evidence of compliance or to pay the late fee within 60 days after service of the notice. The board shall certify the names of all lawyers so suspended under this rule to the clerk of the supreme court, all supreme court justices, all court of appeals and circuit court judges, all circuit court commissioners appointed under SCR 75.02(1) in this state, all circuit court clerks, all juvenile court clerks, all registers in probate, the executive director of the state bar of Wisconsin, the Wisconsin State Public Defender's Office, and the clerks of the federal district courts in Wisconsin. A lawyer shall not engage in the practice of law in Wisconsin while his or her state bar membership is suspended under this rule.

[10] Former SCR 20:8.4(f) (effective through June 30, 2007) stated it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers; . . ...."

before his court while suspended in violation of former SCR 20:3.3(a)(1).[11] Attorney Hammis repeatedly argued that he did not mislead Judge Koschnick regarding his suspension status. Attorney Hammis testified, "I looked right in his eyes and I said It's being taken care of today, Judge, exactly into his eyes and he said it better be, and then he let me go back to the desk."

¶ 24. The referee observed that this statement implied that Judge Koschnick was willing to bend the rules with Attorney Hammis after realizing Attorney Hammis was suspended. The referee explicitly found Attorney Hammis' testimony in this regard was "untruthful." The referee noted, further, that Attorney Hammis' claims were inconsistent with his later testimony at the hearing. There, Attorney Hammis admitted that at the time of the plea hearing, he knew he was not authorized to practice law. Attorney Hammis was asked, "Knowing that you were suspended when you appeared in his court, why did you go ahead at that point and make that appearance?" Attorney Hammis replied, "I wanted the client to be on probation as soon as possible. I knew that I was going to have it resolved that day or thought in my mind I would have it resolved that day, and I made a really bad mistake." The referee thus found that Attorney Hammis appeared before Judge Koschnick knowing he was suspended. The referee observed:

> Perhaps [Attorney Hammis] lied to Judge Koschnick because he did not want the hearing to be rescheduled. Perhaps, he lied because he did not want to admit to his client, his client's wife, and the district attorney that his license to practice law had been suspended. Regard-

---

[11] Former SCR 20:3.3(a)(1) (effective through June 30, 2007) provided that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal; . . . ."

less, I find that Hammis' version of what he said to Judge Koschnick when asked about his suspension cannot be believed. I find Judge Koschnick correctly reported to OLR the day of the hearing, June 8, 2007, that Hammis falsely stated he " 'had taken care of it' yesterday afternoon and that he was no longer suspended."

The referee noted further that:

This count more than any of the other counts in the complaint cause one to pause and take note of all the facts and circumstances surrounding this incident. It is this count which most clearly shows Attorney Hammis' willingness to bend the rules, lie, and proceed recklessly with his obligations and responsibilities under SCR Chapter 20.

In sum, the referee found that Attorney Hammis knowingly made a false statement of fact to Judge Koschnick regarding his ability to practice law on June 8, 2007. Thus, the referee concluded that Attorney Hammis violated former SCR 20:3.3(a)(1). Attorney Hammis does not appeal this conclusion.

¶ 25. With respect to Count 7, the OLR complaint alleged that Attorney Hammis averred to the BBE that he had attended a 3 1/2 hour CLE course ("Agricultural and Business") on June 8, 2007. In fact, the program had not yet commenced when Attorney Hammis filed his petition for reinstatement. The referee concluded this conduct violated SCR 20:8.4(c). Attorney Hammis does not appeal this conclusion.

¶ 26. Count 8 of the complaint alleged and the referee concluded that Attorney Hammis' failure to notify clients, courts, and opposing counsel of his sus-

31

pension violated SCR 22.26(1),[12] made actionable via former SCR 20:8.4(f) (effective through June 30, 2007).

---

[12] SCR 22.26(1) states: Activities following suspension or revocation.

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

(d) Within the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over clients' work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and procedures regarding the closing of the attorney's practice.

32

Attorney Hammis does not appeal the conclusion that he committed the misconduct described in Count 8 of the complaint.

¶ 27. With respect to Count 9, the OLR alleged that Attorney Hammis failed to respond to the OLR's multiple requests for information about the pending grievances. The referee concluded that by failing to provide a written response to grievance matters until January 7, 2008, after three requests for a written response, and after this court ordered him to show cause why his law license should not be suspended for

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any subsequent proceeding instituted by or against the attorney, proof of compliance with the rule and with the suspension or revocation order is available.

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

(3) Proof of compliance with this rule is a condition precedent to reinstatement of the attorney's license to practice law.

his failure to cooperate with OLR's investigations, Attorney Hammis violated SCR 22.03(2) as actionable via SCR 20:8.4(h). Attorney Hammis does not appeal this conclusion.

¶ 28. The OLR complaint also alleged four counts of misconduct relating to Attorney Hammis' representation of V.T. Two allegations involve failure to refund unearned fees and failure to respond to the OLR. Attorney Hammis conceded the misconduct in these two counts (Counts 12 and 13). Attorney Hammis contested the other two counts relating to his representation of V.T.

¶ 29. V.T. hired Attorney Hammis in July of 2007 to represent him in an action against the Rock River Leisure Estates and T.M. and C.M., residents of Rock River, for their alleged failure to abide by homeowner rules and regulations. Attorney Hammis conducted some initial discovery. In October of 2007 and January of 2008 Attorney Hammis prepared draft complaints in this matter, but it is undisputed that between October 2007 and March 2008 Attorney Hammis never filed the complaint, despite continued urging by V.T. On March 11, 2008, V.T. fired Attorney Hammis.

¶ 30. V.T. paid Attorney Hammis $2,000 between July 22, 2007, and March 11, 2008. Attorney Hammis did not deposit these fees in his trust account, and he did not provide written notice to V.T. regarding any rights V.T. had, or any obligations Attorney Hammis had, upon termination of the representation. V.T. subsequently filed a grievance with the OLR regarding Attorney Hammis' representation.

¶ 31. In Count 10 of the complaint the OLR alleged that Attorney Hammis violated SCR 20:1.1[13] when he failed to take reasonably available steps to pursue V.T.'s civil complaint. The referee acknowledged that Attorney Hammis' "conduct and procrastination with his client clearly fell below his client's expectations of him as his attorney." However, the referee observed, a lawyer does not necessarily violate supreme court rules each time a client is dissatisfied with the representation received. The referee ultimately concluded that OLR had failed to establish by clear, satisfactory, and convincing evidence that Attorney Hammis lacked the legal knowledge, skill, thoroughness, and preparation reasonably necessary for his representation of V.T. The referee recommended dismissal of this charge. OLR did not appeal this recommendation.

¶ 32. OLR does appeal the referee's recommendation to dismiss Count 11. There, the OLR alleged that by failing to pursue V.T.'s case for a period of over seven months from the time he was hired in July 2007 to the time of his discharge in March 2008, Attorney Hammis failed to proceed with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[14] The OLR asserts that the referee's analysis regarding Count 11 is clearly erroneous. After careful consideration, we disagree and accept the referee's recommendation to dismiss Count 11.

---

[13] SCR 20:1.1 provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[14] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

¶ 33. Attorney Hammis and V.T. exchanged a number of e-mails about the strategy and timing of a cease and desist letter and the drafting and filing of a separate summons and complaint. On September 7, 2007, V.T. and Attorney Hammis decided to file a complaint. The record demonstrates that over the following months V.T. asked, with increasing frustration, about the status of the complaint and Attorney Hammis responded with excuses for the continuing delay and promises of action that did not materialize. Attorney Hammis and V.T. exchanged messages on September 7, 2007, September 26, 2007, October 2, 2007, and October 16, 2007, and on October 20, 2007, V.T. still had "yet to see the draft." Three days later, V.T. again asked about the status of the complaint. On October 28, 2007, Attorney Hammis made excuses for another delay. After some further inquiries V.T. complained on November 1, 2007, that "getting anything substantive is getting to be painful." On November 7, 2007, Attorney Hammis told V.T. he would file the complaint "tomorrow." On November 19 V.T. again asked Attorney Hammis about the status. By December 4, 2007, V.T., in frustration, claimed communication appears to be nonexistent and requested a refund of his deposit. On December 23, 2007, he inquired, "STATUS?????" By December 28, 2007, Attorney Hammis claimed he had the complaint and it was drafted against both parties. In V.T.'s letter to Attorney Hammis of March 11, 2008, he referred to Attorney Hammis' "empty promises" and all of the delays over the past six months. He asked for the return of his $2,000 deposit. Ultimately, V.T. filed a grievance regarding this matter.

¶ 34. The referee and the OLR view this situation differently. The referee acknowledges that Attorney Hammis' "conduct may have been unproductive to re-

36

solving [V.T.'s] case" and that "he did not prioritize [the] case," but ultimately concludes that such conduct does not rise to the level of a violation of SCR 20:1.3. The referee explains:

> The record shows numerous [e-mails] back and forth between [V.T.] and Hammis. [V.T.] is clearly asking Hammis to act, while Hammis' actions are not satisfactory to [V.T.]. But, Hammis responded to almost every [e-mail] [V.T.] sent him. Hammis' conduct may have been unproductive to resolving [V.T.'s] case and it shows he did not prioritize [V.T.'s] case. But it does not rise to the level of a violation of SCR 20:1.3 for failing to act with reasonable diligence and promptness. [V.T.] was able to pursue his matter with subsequent counsel and reach a resolution satisfactory to him. [V.T.] was not harmed by Hammis' inaction.

Therefore, the referee concluded the OLR failed to demonstrate with clear, satisfactory, and convincing evidence that Attorney Hammis violated SCR 20:1.3 and recommended dismissal of the charge.

¶ 35. The OLR contends this analysis is clearly erroneous. According to the OLR, Attorney Hammis' responses to V.T.'s e-mails "only prolonged the client's frustration." The OLR explains:

> [V.T.] was looking for action, not empty promises to act. The fact that he was later able to pursue the case with another attorney may represent a mitigating circumstance as to sanction. It is not a defense to the underlying charge.
>
> The unchallenged evidence is that, despite continuous prodding from the client and his own promises, Hammis, in fact, did nothing to meaningfully pursue this case for his client for a period of over seven months from the time he was hired in July of 2007 until the

37

time of his discharge in March of 2008. The referee admits this delay to be factually proven. Her rationale as to why it does not represent a violation of SCR 20:1.3 is flawed.

However, while we do not condone the excessive delay or repeated excuses offered by Attorney Hammis, Attorney Hammis did communicate frequently with his client and was apparently attempting to craft an effective and accurate complaint. We therefore accept the referee's recommendation to dismiss the claim that Attorney Hammis' conduct violated SCR 20:1.3.

¶ 36. In Count 12, the OLR alleged, and Attorney Hammis conceded, that Attorney Hammis violated SCR 20:1.15(b)(4m)[15] by initially depositing V.T.'s unearned advance fee payment in his business account rather

[15] SCR 20:1.15(b)(4m) states, in pertinent part, as follows: Alternative protection for advanced fees.

A lawyer who accepts advanced payments of fees may deposit the funds in the lawyer's business account, provided that a court of competent jurisdiction must ultimately approve the lawyer's fee, or that the lawyer complies with each of the following requirements:

a. Upon accepting any advanced payment of fees pursuant to this subsection, the lawyer shall deliver to the client a notice in writing containing all of the following information:

1. the amount of the advanced payment;

2. the basis or rate of the lawyer's fee;

3. any expenses for which the client will be responsible;

4. that the lawyer has an obligation to refund any unearned advanced fee, along with an accounting, at the termination of the representation;

than holding the fees in his client trust account until the fees were earned, without providing V.T. with a written notice as required pursuant to SCR 20:1.15(b)(4m).

¶ 37. Finally, in Count 13, the OLR alleged and the referee agreed that by failing to refund V.T.'s unearned fee for four months following the March 11, 2008, letter terminating his services, Attorney Hammis failed to timely refund an unearned fee upon termination of representation in violation of SCR 20:1.16(d). No appeal from this recommendation was filed.

5. that the lawyer is required to submit any dispute about a requested refund of advanced fees to binding arbitration within 30 days of receiving a request for such a refund; and

6. the ability of the client to file a claim with the Wisconsin lawyers' fund for client protection if the lawyer fails to provide a refund of unearned advanced fees.

b. Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:

1. a final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees;

2. notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and

3. notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

¶ 38. We turn to the question of the appropriate sanctions for Attorney Hammis' misconduct. Attorney Hammis asks the court to consider a lesser sanction than the four-month suspension recommended by the referee, namely a 60–day suspension. The OLR asserts that four months is inadequate and requests a six-month suspension.

■

¶ 39. Consideration of the appropriate discipline requires evaluating the following factors: (1) the seriousness, nature, and extent of the misconduct; (2) the level of discipline needed to protect the public, the courts, and the legal system from repetition of the attorney's misconduct; (3) the need to impress upon the attorney the seriousness of the misconduct; and (4) the need to deter other attorneys from committing similar misconduct. *See, e.g., In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. As is frequently the case, sanctions for misconduct can vary depending on the precise nature of the facts and any aggravating or mitigating circumstances specific to the case.

¶ 40. Attorney Hammis seeks a 60–day suspension. He explains that he violated the supreme court rules during a period of stress and disruption in his solo practice, that he maintains the confidence and trust of his current clients, that the recommended four-month suspension is not consistent with this court's preference for progressive discipline, and asserts that a 60–day suspension would be more consistent with recent disciplinary decisions of this court.

¶ 41. Attorney Hammis' appellate brief provides context for the misconduct. He explains that during 2007, when he committed the bulk of the rule violations, two things happened: (1) his assignment as a

40

receiver for a company in northern Wisconsin ballooned from a two-day-per-week obligation to more than full-time; and (2) his partnership with another lawyer abruptly ended when she cleaned out their offices overnight, leaving him to find new office space and reorganize his cases. Basically, he states that he "made a serious error: he tried to do too much; he tried to maintain his commitments to his Public Defender clients and to his private clients." Attorney Hammis provides positive testimonials from several clients and argues that a 60–day sanction will permit him to "still maintain his practice" while a "penalty of four months would make it virtually impossible for him to do so without essentially starting his practice over."

¶ 42.　The OLR, however, responds that stress is not a mitigating factor in imposing discipline. Indeed, the OLR asserts that the only mitigating factor as to sanction is the absence of any prior disciplinary record. OLR emphasizes the pattern of deceit reflected in Attorney Hammis' decisions and urges a six-month suspension.

■■

¶ 43.　We consider appropriate discipline de novo but we are guided by the referee's thoughtful consideration and recommendations. The referee stated:

> I am deeply troubled by Hammis' willingness to lie in furtherance of his own personal goals. He willingly misled a sitting circuit court judge about whether or not he had a valid law license. He repeatedly erred in his systematic billing practices to SPD to the point where he often billed for more than 15 hours in a day. He lied on his petition for reinstatement when he asserted he had not practiced law without a license during his suspension. An omission is as much of a lie as a false statement. Hammis' failure to notify other

41

judges of his suspension and his failure to notify his clients of his suspension are lies too.

The referee was thus of the opinion that Attorney Hammis had shown a repeated willingness to lie to satisfy his own interests or what he perceived as the prevailing interest. She states:

> The Rules of Professional Conduct, without equivocation, prohibit lying. Our system relies upon the honesty of its participants. It really [cannot] function otherwise. Hammis has wholly failed in these matters to follow that basic rule. It is clear that Hammis was under considerable stress after the demise of his law firm partnership and the increased stress associated with a particularly complicated and difficult case. But, stress alone should not cause an attorney to be repeatedly untruthful.

In light of the record before us and the referee's observations, we agree with the referee and the OLR that the 60–day suspension sought by Attorney Hammis is simply inadequate, particularly in light of the unacceptable pattern of lying and deceit committed by Attorney Hammis.

¶ 44. Accordingly, we carefully consider the OLR's request for a more lengthy six-month suspension. It is important to note that a six-month suspension involves more than just an additional two-month period of time. Pursuant to the supreme court rules, a six-month suspension requires the suspended attorney to formally petition the supreme court for reinstatement pursuant to SCR 22.28(3), a process which requires a full evidentiary hearing and further delays a suspended attorney's return to practice for a significant length of time. *See* SCRs 22.29–22.33. It was in part for this reason the referee opined that a six-month suspension would be

42

too harsh considering the fact that Attorney Hammis has not previously been disciplined. Both parties presented case law in support of their respective positions but the cases are highly fact specific. On balance, we conclude that a four-month suspension is sufficient to accomplish the objective of professional discipline and is consistent with our precedent.

¶ 45. Attorney Hammis concedes he committed these ethical violations at a time of significant disruption to his legal practice, while overextended professionally and trying to maintain his practice during the break-up of his legal partnership. He acknowledges he "made a serious error: he tried to do too much." Many of his ethical infractions such as failing to timely maintain compliance with CLE credits and billing anomalies, suggest office management issues. We conclude that our goal of protecting the public from similar misconduct would be served by imposing certain conditions on Attorney Hammis' license to practice law and seeking to ensure better case handling practices in the future. We direct him to successfully complete a law office management class approved by the OLR, such as the State Bar of Wisconsin's Law Office Management Program, within six months of the date of this order. Finally, we accept the referee's recommendation that we impose the full costs of this proceeding on Attorney Hammis.

¶ 46. IT IS ORDERED that the license of James E. Hammis to practice law in Wisconsin is suspended for a period of four months, effective March 1, 2011.

¶ 47. IT IS FURTHER ORDERED that within six months of the date of this order James E. Hammis shall complete an OLR-approved office management course. If James E. Hammis fails to comply with this condition absent a showing of his inability to do so, James E.

43

Hammis' license to practice law in Wisconsin may be suspended until further order of the court.

¶ 48. IT IS FURTHER ORDERED that within 60 days of the date of this order James E. Hammis pay to the Office of Lawyer Regulation the costs of this proceeding, which total $16,526.73 as of September 28, 2010. If costs are not paid within the time specified and absent a showing of his inability to pay, James E. Hammis' license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 49. IT IS FURTHER ORDERED that James E. Hammis shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.