# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP818-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against James E. Hammis, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>        Complainant-Respondent,<br>   v.<br>James E. Hammis,<br>        Respondent-Appellant. |

---

DISCIPLINARY PROCEEDINGS AGAINST HAMMIS

---

| | |
|---|---|
| OPINION FILED: | February 17, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

---

ATTORNEYS:

For the respondent-appellant, there were briefs by *James E. Hammis* and *Hammis Law Offices, LLC*, Stoughton, and oral argument by *James E. Hammis*.

For the Office of Lawyer Regulation, there was a brief and oral argument by *Robert G. Krohn* and *Roethe Pope Roethe LLP*, Edgerton.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2012AP818-D

STATE OF WISCONSIN                    :    IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against James E. Hammis, Attorney at Law:**

**Office of Lawyer Regulation,**                    **FILED**

        **Complainant-Respondent,**

                                                 **FEB 17, 2015**

    **v.**

**James E. Hammis,**                              Diane M. Fremgen
                                              Clerk of Supreme Court

        **Respondent-Appellant.**

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1    PER CURIAM.    Attorney James E. Hammis appeals a report filed by referee James C. Boll Jr. on August 5, 2013, concluding that Attorney Hammis committed nine counts of professional misconduct and recommending that this court suspend his license to practice law in Wisconsin for a period of four months, that Attorney Hammis make restitution to a client in the amount of $995, and that he be required to pay the full costs of this proceeding, which are $12,022.38 as of December 2, 2014.

Attorney Hammis asserts that many of the referee's findings of fact are clearly erroneous. In the alternative, Attorney Hammis argues that, even assuming this court finds that he committed some or all of the counts of misconduct found by the referee, a public reprimand would be an appropriate level of discipline.

¶2 Upon careful review of this matter, we conclude that a 90-day suspension of Attorney Hammis's license to practice law is an appropriate sanction for his misconduct. We agree with the referee that Attorney Hammis should make restitution to his former client in the amount of $995, and that he be required to pay the full costs of this proceeding.

¶3 Attorney Hammis was admitted to practice law in Wisconsin in 1988. He most recently practiced in Stoughton but indicates that his primary occupation now is in the construction trade.

¶4 In 2011 this court suspended Attorney Hammis's license for four months based on a finding that he had engaged in ten counts of misconduct with respect to two different clients, practiced law while administratively suspended, and failed to cooperate with the investigation of the Office of Lawyer Regulation (OLR). In re Disciplinary Proceedings Against Hammis, 2011 WI 3, 331 Wis. 2d 19, 793 N.W.2d 884.

¶5 On April 18, 2012, the OLR filed a complaint alleging the nine counts of misconduct that underlie this appeal. The complaint alleges that on July 20, 2005, Attorney Hammis was convicted in the Court of Common Pleas, Tuscarawas County, Ohio of the crime of reckless endangering, a first degree misdemeanor

under Ohio law. Attorney Hammis did not report his conviction to the OLR or to the clerk of this court as required by supreme court rules. Attorney Hammis was to pay all court costs in the Ohio criminal matter. The Tuscarawas County Clerk of Court prepared an itemized bill of costs and sent it to Attorney Hammis on August 24, 2005. The itemized bill of costs was repeatedly mailed to Attorney Hammis—at least 26 times—but Ohio court records indicated he had not paid the costs, which totaled $232.16 as of September 13, 2010.

¶6 The Ohio criminal matter arose while Attorney Hammis was the president, operator, and sole member of ST&E Fabrication, LLC (ST&E). The OLR's complaint alleged that ST&E was charged in a separate companion criminal case in which Attorney Hammis pled guilty on behalf of ST&E to two felony counts of illegal transportation of hazardous waste and illegal disposal of hazardous waste.

¶7 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Hammis's misdemeanor conviction:

> [COUNT ONE] By engaging in the conduct leading to his personal misdemeanor conviction of criminal endangering in State of Ohio v. James Hammis, Tuscarawas County (Ohio) Case No. 2005 CR 06 0181, Hammis violated SCR 20:8.4(b).[1]

---

[1] Supreme Court Rule (SCR) 20:8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

3

[COUNT TWO] By failing to timely notify OLR and the Clerk of the Wisconsin Supreme Court of his 2005 Ohio criminal conviction, Hammis violated SCR 21.15(5)[2] which is enforced under the Rules of Professional Conduct via SCR 20:8.4(f).[3]

[COUNT THREE] By failing to pay the court costs, as ordered in the judgment in State of Ohio v. James Hammis, Tuscarawas County (Ohio) Case No. 2005 CR 06 0181, Hammis violated SCR 20:3.4(c).[4]

¶8 The other six counts of misconduct alleged in the OLR's complaint arose out of Attorney Hammis's representation of I.B. On September 7, 2007, I.B. was found guilty of two counts of homicide by intoxicated use of a vehicle and one count of causing injury while operating under the influence. He was subsequently sentenced to six years in prison and seven years

---

[2] SCR 21.15(5) provides:

An attorney found guilty or convicted of any crime on or after July 1, 2002, shall notify in writing the office of lawyer regulation and the clerk of the Supreme Court within 5 days after the finding or conviction, whichever first occurs. The notice shall include the identity of the attorney, the date of finding or conviction, the offenses, and the jurisdiction. An attorney's failure to notify the office of lawyer regulation and clerk of the supreme court of being found guilty or his or her conviction is misconduct.

[3] SCR 20:8.4(f) provides that it is professional misconduct for a lawyer to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[4] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

4

and six months of extended supervision for each of the homicide counts, plus an additional year in prison on the causing injury conviction.

¶9 In May of 2010, I.B. contacted Attorney Hammis regarding legal representation for the purpose of pursuing a sentence modification. On May 24, 2010, Attorney Hammis sent I.B. a letter enclosing a contract for legal services. I.B. signed the contract and returned it to Attorney Hammis. The contract required a $2,000 advance fee. The contract expressly contemplated that at least a portion of the required advanced fee would be paid by I.B.'s mother, L.B. The contract also provided that at the conclusion of the representation, a refund of any unearned advanced fee would be made to I.B.

¶10 On June 1, 2010, in response to Attorney Hammis's letter of May 24, I.B. sent Attorney Hammis a cover letter and copies of the sentencing transcript and pre-sentence investigation report. On June 9, 2010, I.B. paid Attorney Hammis $995 from his inmate account. I.B.'s mother paid another $400 toward the advanced fee by personal check dated June 26, 2010.

¶11 Attorney Hammis did not deposit any portion of the $1,395 fee payments into his client trust account and instead deposited the funds into his business account.

¶12 Attorney Hammis and I.B. spoke on June 18, 2010, and discussed an outline of issues and actions that needed to be taken on the file. I.B. wrote another letter to Attorney Hammis on July 14, 2010, in which he mentioned the prior payments,

5

asked why he had not received a plan of action for his case, and asked to be updated on the financial and legal status. Attorney Hammis failed to respond.

¶13 On August 6, 2010, I.B. wrote to Attorney Hammis for the last time, saying he was unable to pay the $2,000 advanced fee and that he wanted a refund of the $1,395 previously paid. He also asked that Attorney Hammis return the sentencing transcript and pre-sentence investigation report. Attorney Hammis failed to respond to the letter and failed to return I.B.'s transcript and pre-sentence report in a timely manner.

¶14 On September 14, 2010, L.B. passed away. Attorney Hammis paid $400 from his business account toward L.B.'s funeral expenses. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Hammis's representation of I.B.:

> [COUNT FOUR] By initially depositing the unearned advance fee payments for [I.B.] in his business account rather than holding the fees in his client trust account until the fees were earned, and then by not providing required notices and accounting upon termination of representation, Hammis violated SCR 20:1.15(b)(4m)b.1. through 3.[5]

---

[5] SCR 20:1.15(b)(4m)b. provides:

> Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:

> 1. a final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees;

(continued)

6

[COUNT FIVE] By failing to respond to his client's July 14, 2010 inquiry about what was happening in his case and by failing to provide an action plan to [I.B.] despite stating he would do so, Hammis violated SCR 20:1.4(a)(3) and (4).[6]

[COUNT SIX] By failing to respond to his client's letters of July 14 and August 6, 2010, concerning the advance fee receipts, a refund, and expenses, Hammis violated SCR 20:1.5(b)(3).[7]

[COUNT SEVEN] By retaining the entire amount of then [sic] fee paid by [I.B.] despite never accomplishing the service he had been hired to perform, Hammis violated SCR 20:1.5(a).[8]

---

2. notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and

3. notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

[6] SCR 20:1.4(a)(3) and (4) provide, respectively, that a lawyer shall "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests by the client for information."

[7] SCR 20:1.5(b)(3) provides that "[a] lawyer shall promptly respond to a client's request for information concerning fees and expenses."

[8] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(continued)

[COUNT EIGHT]  By failing to refund the unearned advance fee when the client terminated the representation and by failing to return the client's transcripts and pre-sentence investigative report, Hammis violated SCR 20:1.16(d).[9]

[COUNT NINE]  By failing to provide relevant information, to answer questions fully, or to furnish documents and by making misrepresentations in response

---

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[9] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

to OLR's investigation of the grievance filed against him by [I.B.], Hammis violated SCR 22.03(6)[10] enforced via SCR 20:8.4(h).[11]

¶15 James C. Boll, Jr. was appointed as referee in the matter. A hearing was held before the referee on May 14, 2013. The witnesses at the hearing were Attorney Hammis; Robert Weber, an OLR investigator; and G.G., L.B.'s mother.

¶16 At the start of the hearing, Attorney Hammis objected to the introduction of any evidence pertaining to ST&E's conviction for illegally transporting and disposing of hazardous waste. The referee said he would allow the admission of such evidence and would give it the appropriate weight.

¶17 At the hearing, Attorney Hammis claimed that he had in fact paid the court costs associated with his Ohio misdemeanor conviction. He claimed that the costs were collected by a collection agency. He had no formal records from the clerk of court, no cancelled check, and no receipts or satisfaction of judgment to prove that he actually paid the amount.

---

[10] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[11] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

¶18  Attorney Hammis said he paid $400 to Gunderson Funeral Home to repay the money L.B. had advanced for her son's case. I.B. testified in his deposition that he never authorized the payment of the $400 to the funeral home but he would have authorized it if he had been asked to do so.

¶19  The referee issued his report on August 5, 2013.  The referee found that the OLR had met its burden of proof with respect to all nine counts alleged in the OLR's complaint. While the OLR had sought restitution in the amount of $1,395 in the I.B. matter, the referee noted that I.B. himself testified he would have approved Attorney Hammis's paying $400 to Gunderson Funeral Home if he had been asked.  The referee said, "The payment of the money was a good faith effort by Mr. Hammis to do the right thing and he should not be penalized for such an act."  Thus, the referee found that Attorney Hammis should make restitution to I.B. in the amount of $995.

¶20  The referee said he was very troubled by the fact that Attorney Hammis had been previously suspended for ten counts of misconduct in five different matters, one of which was similar to the I.B. matter.  The referee also said he was very troubled by Attorney Hammis's failure to provide any credible evidence to challenge the OLR's charges, and he said Attorney Hammis has failed to acknowledge any wrongdoing.  Accordingly, although the OLR sought a 90-day suspension, the referee recommended a four-month suspension.

¶21  Attorney Hammis stipulated to the misconduct alleged in Counts One and Two of the OLR's complaint.  He argues that

the referee erred in finding that the OLR met its burden of proof on the remaining seven counts. He asserts that many of the referee's findings of fact are clearly erroneous, and he argues that the level of discipline recommended by the referee is far too harsh, even assuming all counts of misconduct were proven. He argues that Counts Five and Six are multiplicitous. He accuses the OLR of inflating the number of counts of misconduct. He asserts that the referee was confused, not objective, and excessively biased against him. He claims that L.B.'s mother lied at the evidentiary hearing.

¶22 The OLR asserts that none of the referee's findings of fact are clearly erroneous.[12]

¶23 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶24 There is no showing that any of the referee's findings of fact are clearly erroneous. Accordingly, we adopt them. We

---

[12] The OLR concedes that in determining a violation of Count Three, the referee inadvertently made a finding of fact that the count was based upon the referee's review of an exhibit which refers to a plea agreement in the ST&E case, i.e., Exhibit 1, when in fact the referee was describing Exhibit 5.

also agree with the referee's conclusions of law that Attorney Hammis violated all of the supreme court rules set forth above.

¶25 With respect to the appropriate level of discipline, after careful review of the matter, we conclude that a 90-day suspension is appropriate. This is not the first time that Attorney Hammis has been found to have committed professional misconduct. Some of the behavior in this case mirrors the misconduct that resulted in his four-month license suspension back in 2011. Although Attorney Hammis argues that the referee was biased against him, the referee found Attorney Hammis's version of events to be incredible. Credibility determinations are particularly within the province of the trier of fact, and we find no basis to second-guess them.

¶26 In addition, as an inmate, I.B. was a particularly vulnerable client. All of these factors weigh against imposing a public reprimand. On the other hand, it is arguable that there may be some overlap between some of the counts alleged in the OLR's complaint. On balance, we conclude that a 90-day suspension, which was the level of discipline originally sought by the OLR, rather than the four-month suspension recommended by the referee, will sufficiently protect the public from similar misconduct and impose upon Attorney Hammis the gravity of the misconduct. We further agree with the referee's recommendation that Attorney Hammis be ordered to make restitution to I.B. in the amount of $995 and that he bear the full costs of this proceeding.

12

¶27 IT IS ORDERED that the license of James E. Hammis to practice law in Wisconsin is suspended for a period of 90 days, effective March 19, 2015.

¶28 IT IS FURTHER ORDERED that within 60 days of the date of this order, James E. Hammis shall pay restitution in the amount of $995 to I.B.

¶29 IT IS FURTHER ORDERED that within 60 days of the date of this order, James E. Hammis shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶30 IT IS FURTHER ORDERED that restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶31 IT IS FURTHER ORDERED that James E. Hammis shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶32 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

13