# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2244-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against James Edward Hammis, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>　　　　Complainant-Respondent,<br>　　　v.<br>James Edward Hammis,<br>　　　　Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST HAMMIS

| | |
|---|---|
| OPINION FILED: | May 23, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 14, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| 　COURT: | |
| 　COUNTY: | |
| 　JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| 　CONCURRED: | |
| 　DISSENTED: | ZIEGLER, J. dissents, joined by R.G. BRADLEY, J. (opinion filed). |
| 　NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there was a brief filed by *James E. Hammis* and *Hammis Law Offices, LLC*, Stoughton. There was an oral argument by *James E. Hammis*.

For the complainant-respondent, there was a brief filed by *Jonathan E. Hendrix* and *Office of Lawyer Regulation*, Madison. There was an oral argument by *Jonathan E. Hendrix*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2014AP2244-D

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against James Edward Hammis, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant-Respondent,**

  **v.**

**James Edward Hammis,**

      **Respondent-Appellant.**

**FILED**

**MAY 23, 2019**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM. Attorney James Edward Hammis has appealed a report filed by Referee Lisa C. Goldman accepting concessions Attorney Hammis made in a stipulation with the Office of Lawyer Regulation (OLR) that he committed 40 counts of professional misconduct and recommending that his license to practice to law in Wisconsin be revoked.  In his appeal, Attorney Hammis primarily challenges the sanction recommendation and asserts that an appropriate sanction would be a suspension of his license to practice law in the range of one year.

¶2 Upon careful review of this matter, we uphold all of the referee's findings of fact and conclusions of law. We conclude, however, that the facts of this case do not warrant revocation. Instead, we conclude that a three-year suspension of Attorney Hammis' law license is an appropriate sanction for the misconduct at issue. We also deem it appropriate to impose certain conditions upon the reinstatement of his law license. We also order him to pay $400 in restitution to one former client and, as is our usual custom, we impose the full costs of this proceeding, which are $13,160.22 as of March 4, 2019 on Attorney Hammis.

¶3 Attorney Hammis was admitted to practice law in Wisconsin in 1988. The State Bar of Wisconsin shows that he has a Stoughton address.

¶4 In 2011, Attorney Hammis was suspended for four months for ten counts of misconduct involving two clients. The misconduct included practicing law while administratively suspended and failing to cooperate with the OLR's investigation. In re Disciplinary Proceedings Against Hammis, 2011 WI 3, 331 Wis. 2d 19, 793 N.W.2d 884. In 2015, Attorney Hammis' license was suspended for 90 days for nine counts of misconduct, including failure to timely report an Ohio misdemeanor conviction to the OLR or the clerk of this court; failing to communicate with an incarcerated client; retaining an advance fee despite taking little or no action in the matter; failing to hold the advance fee in trust; and failing to cooperate with the

2

OLR's investigation. In re Disciplinary Proceedings Against Hammis, 2015 WI 14, 361 Wis. 2d 1, 859 N.W.2d 108.

¶5 On September 25, 2014, the OLR filed a complaint alleging 46 counts of misconduct against Attorney Hammis. Attorney Hammis filed an answer on January 5, 2015. On August 27, 2015, the OLR filed an amended complaint alleging 49 counts of misconduct. Attorney Hammis filed an answer on January 19, 2016.

¶6 On September 29, 2016, the parties filed a stipulation, and Attorney Hammis entered a no contest plea to 40 counts of misconduct. Attorney Hammis agreed that the referee could use the allegations of the amended complaint as an adequate factual basis to support findings of misconduct as to each of the counts to which Attorney Hammis was pleading no contest. The OLR withdrew nine counts of misconduct. Attorney Hammis agreed that the referee's report should recommend that the court order him to make restitution to one client, R.G., in the amount of $400. The parties further agreed that the issue of the appropriate level of discipline to be imposed for Attorney Hammis' misconduct would be addressed on briefs.

¶7 On January 6, 2017, the parties filed a stipulation of facts specifying that the referee may use specific allegations in the amended complaint as an adequate factual basis to support findings of misconduct as to each of the misconduct counts to which Attorney Hammis pled no contest. The referee issued her report and recommendation on September 14, 2017.

¶8 The counts to which Attorney Hammis pled no contest involved nine separate client matters as well as numerous trust account and other violations.

## G.L.

¶9 According to the amended complaint, in 2006 Attorney Hammis represented G.L. in several criminal cases. The representation ended sometime in 2006 or 2007. In early 2008, the Department of Corrections revoked G.L.'s probation and G.L. was resentenced. G.L. hired Attorney Hammis to appeal his post-revocation sentences. In October 2008, Attorney Hammis wrote to G.L. saying he had mailed a copy of the original sentencing transcript to G.L. "a month ago" and the letter had been returned. Actually Attorney Hammis had just obtained a transcript within the prior two weeks and had not mailed anything to G.L. since June 2008. Attorney Hammis did not file a notice of appearance in the case until January 2009. That same month G.L. asked Attorney Hammis for information about the cost of representation but Attorney Hammis never responded.

¶10 By virtue of the stipulation, Attorney Hammis pled no contest to the following counts of misconduct with respect to his representation of G.L.:

**Count Four:** By failing to respond to his client's request for information on the costs of his representation, Attorney Hammis violated SCR 20:1.5(b)(3).[1]

---

[1] SCR 20:1.5(b)(3) provides: "A lawyer shall promptly respond to a client's request for information concerning fees and expenses."

**Count Five:** By making misrepresentations to his client by letter dated October 31, 2008, Attorney Hammis violated SCR 20:8.4(c).[2]

### B.D.

¶11 In 2010, B.D. was employed as a recreation director for the City of Janesville (City). On November 5, 2010, Janesville sent B.D. a "Pre-determination Notice of Discharge." B.D. met with Attorney Hammis regarding her employment and paid him an advance fee of $2,000. B.D. signed a written fee agreement which allowed Attorney Hammis to deposit the fee into his business account. The agreement required Attorney Hammis to send B.D. a written accounting of his fees at the end of his representation. Attorney Hammis told B.D. he would attend any meetings with the City.

¶12 On December 6, 2010, the City terminated B.D.'s employment. That same day, B.D. instructed Attorney Hammis to file a discrimination complaint against the City. Attorney Hammis prepared a complaint but never filed it.

¶13 On February 23, 2011, Attorney Hammis believed he ceased representing B.D. He never provided her with an accounting. In March of 2011, B.D. filed a grievance against Attorney Hammis with the OLR. Attorney Hammis failed to respond to numerous OLR requests for a response to the grievance. Attorney Hammis eventually responded to the OLR in July 2011

---

[2] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

indicating he had time sheets and phone records for his representation of B.D.  The OLR requested Attorney Hammis to provide that information, but Attorney Hammis failed to provide it.

¶14  By virtue of the stipulation, Attorney Hammis pled no contest to the following counts regarding his representation of B.D.

> **Count Six**: For failing to account to B.D. for her $2,000 advance fee deposited into his operating account, as required by the alternative fee placement measures of former SCR 20:1.15(b)(4m), Attorney Hammis violated former SCR 20:1.15(b)(4).[3]

> **Counts Eight and Nine**:  By failing to pursue his client's interest in negotiating considerations in exchange for termination of her employment and by failing at any time from December 6, 2010, to February 23, 2011, to file the discrimination complaint he had

---

[3] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule."  See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016).  Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(b)(4) provided:

> Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g).  Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

prepared for his client, Attorney Hammis violated SCR 20:1.3.[4]

**Count Ten:** By failing to timely respond to the OLR's request for a written response to B.D.'s grievance, Attorney Hammis violated SCR 22.03(2),[5] enforced via SCR 20:8.4(h).[6]

**Count Eleven:** By failing to furnish documents requested by the OLR, which he previously admitted he possessed, Attorney Hammis violated SCR 22.03(6),[7] enforced via SCR 20:8.4(h).

---

[4] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[5] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[6] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

[7] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

7

**S.K.**

¶15 In 2002, M.K. filed for divorce from S.K. Attorney Hammis agreed to represent S.K. in the matter in June of 2009. In November of 2010, the circuit court found S.K. in contempt and ordered him to spend 45 days in jail, commencing December 1, 2010.

¶16 Attorney Hammis moved to withdraw from representing S.K. on January 4, 2011. S.K. filed a grievance with the OLR against Attorney Hammis on June 1, 2011. Attorney Hammis failed to respond to numerous OLR requests for information regarding the grievance. Attorney Hammis finally provided a partial response in September of 2011. He provided additional documents in December of 2011. By virtue of the stipulation, Attorney Hammis pled no contest to the following count of misconduct regarding his representation of S.K.

> **Count Thirteen**: By not timely responding to the OLR's request for a written response to S.K.'s grievance, and then making only a partial and incomplete response that did not include the documents expressly requested and which was not supplemented until approximately four months after the original OLR request, Attorney Hammis violated SCR 22.03(2) and SCR 22.03(6), enforced via SCR 20:8.4(h).

**R.B. and Trust Account Violations**

¶17 In May 2010, R.B. hired Attorney Hammis to represent him in an automobile accident case. The parties agreed that R.B. would receive the first $4,800 collected, while Attorney Hammis would advance all expenses and recover anything in excess of $4,800. Attorney Hammis filed a complaint in the case in

8

June 2010. He subsequently negotiated settlements for R.B. with two insurance companies. One of the companies mailed Attorney Hammis a check in early August 2010 along with a release for R.B.'s signature. Attorney Hammis asked R.B. to lower his share of the settlement to $4,500. R.B. reluctantly agreed. Attorney Hammis deposited the check in his trust account but never obtained R.B.'s signature on the release or sent a signed release to the insurance company.

¶18 On or around August 13, 2010, Attorney Hammis gave R.B. a trust account check for $4,500. Attorney Hammis failed to send a check to another insurance company for their subrogation interest. By January 27, 2011, the trust account's balance was $1,000 less than the second insurance company was owed for their subrogation interest. In February 2011, the circuit court dismissed the R.B. case with prejudice because although the parties had reported a settlement, no dismissal order was submitted.

¶19 In the summer of 2011, both insurance companies filed grievances with the OLR against Attorney Hammis. Attorney Hammis did not respond to the OLR's initial requests for information about the grievances. He subsequently provided partial responses. In December 2011, Attorney Hammis closed the trust account, which then had a balance of $9.07, having never disbursed the $1,489.82 due to the subrogated insurance carrier.

¶20 On December 14, 2011, the OLR filed a motion requesting an order to show cause with this court due to Attorney Hammis' noncooperation with the OLR's investigation.

9

An order to show cause was issued. On December 30, 2011, Attorney Hammis sent the subrogated insurance carrier a "replacement check" for $1,489.82 with a cover letter representing that he had previously sent a check on August 13, 2010.

¶21 The OLR withdrew its motion for an order to show cause on January 9, 2012. On January 20, 2012, the credit union on which the check was drawn refused to honor the check. The account was closed four days later. In May of 2012, Attorney Hammis sent the subrogated insurance carrier a check dated April 17, 2012, for $1,489.82 drawn on a business account at a different bank.

¶22 In July and August 2013, the OLR wrote and then personally served Attorney Hammis with requests for various documents. Attorney Hammis did not timely respond. In September 2013, the OLR filed another motion requesting an order to show cause. An order to show cause was issued. In November 2013, this court temporarily suspended Attorney Hammis' Wisconsin law license due to his failure to cooperate with the OLR's investigation. Attorney Hammis responded to several of the OLR's requests in December 2013. On December 30, 2013, pursuant to the OLR's request, this court reinstated Attorney Hammis' law license.

¶23 On October 7, 2010, Attorney Hammis transferred $15,000 from his trust account to his wife's checking account, leaving the trust account with a shortfall of $1,589.50. On December 14, 2010, Attorney Hammis withdrew $45,000 from the

10

trust account and purchased a cashier's check in that amount. Between July 2010 and December 2011, Attorney Hammis deposited $15,400 of his or his law firm's funds into the trust account but his client ledgers did not reflect those deposits.

¶24 Between July 2010 and February 2011, Attorney Hammis made 56 prohibited Internet or telephone transactions totaling over $250,000 with his trust account. Attorney Hammis failed to identify the client or matter on deposit slips for 19 deposits totaling over $640,000 into the trust account between July 2010 and February 2011. Attorney Hammis' client ledgers indicate that he disbursed more funds then he received for four clients, creating negative balances for those clients in the trust account.

¶25 By virtue of the stipulation, Attorney Hammis pled no contest to the following counts of misconduct:

**Count Fourteen:** By converting funds held in trust for a third party to other purposes sometime between August 10, 2010 (the deposit of the insurance settlement check in the R.B. matter) and January 27, 2011 (a date on which the trust account balance was less than the money owed to the subrogated insurance carrier in the R.B. matter), Attorney Hammis violated SCR 20:8.4(c).

**Count Fifteen:** By receiving funds in trust for a third party, the subrogated insurance carrier, and then failing to pay that party for over 20 months, Attorney Hammis violated former SCR 20:1.15(d)(1) through (3).[8]

───────────────

[8] Former SCR 20:1.15(d)(1) through (3) provided:

(1) Upon receiving funds or other property in which a client has an interest, or in which the lawyer

(continued)

11

**Count Sixteen:**  By failing to hold in trust the funds he received for the purpose of paying the subrogation claim of R.B.'s insurer, Attorney Hammis violated SCR 20:1.15(b)(1).[9]

**Count Eighteen:**  By falsely representing to the subrogated insurance carrier that he had sent a check for $1,489.82 to it on August 13, 2010, Attorney Hammis violated SCR 20:8.4(c).

---

has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing.  Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

(2) Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property.

(3) When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests.  If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust until the dispute is resolved.  Disputes between the lawyer and a client are subject to the provisions of sub. (g)(2).

[9] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation.  All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

**Count Twenty:** By failing to timely answer the OLR's request for a response and his subsequent failure to fully and fairly disclose all the facts and circumstances including those concerning the subrogated insurance carrier's claim, by his wilful failure to fully answer questions, by failing to furnish requested documents, by repeatedly responding to requests for information by referencing non-existent attachments and by generally failing to provide relevant information, Attorney Hammis violated SCR 22.03(2) and (6), and SCR 20:8.4(h).

**Count Twenty-One:** By withdrawing $45,000 from his trust account on December 14, 2010, in order to obtain a cashier's check, Attorney Hammis violated former SCR 20:1.15(e)(4)a.[10]

**County Twenty-Two:** By engaging from July 2010 through February 2011 in 56 prohibited Internet and telephone transactions with a combined dollar value of $259,281.22 to and from his trust account, Attorney Hammis violated former SCR 20:1.15(e)(4)b. and c.[11]

---

[10] Former SCR 20:1.15(e)(4)a. provided: "No disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to 'Cash.'"

[11] Former SCR 20:1.15(e)(4)b. and c. provided:

b. No deposits or disbursements shall be made to or from a pooled trust account by a telephone transfer of funds. This section does not prohibit any of the following:

1. wire transfers.

2. telephone transfers between non-pooled draft and non-pooled non-draft trust accounts that a lawyer mains for a particular client.

c. A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction.

13

**Count Twenty-Three:** By failing to identify the client or matter on every deposit slip for all of the 19 deposits totaling $640,745.79 made to the trust account between July 9, 2010, and February 24, 2011, Attorney Hammis violated former SCR 20:1.15(f)(1)d.[12]

**Count Twenty-Four:** By converting funds held in trust for clients to other purposes sometime between July 21, 2010, and December 9, 2011, Attorney Hammis violated SCR 20:8.4(c).

**Count Twenty-Six:** By depositing at least $15,400 of lawyer or law firm funds into the trust account between July 2, 2010, and February 24, 2011, which funds far exceeded any amounts reasonably necessary to pay monthly account service charges, and none of which was allocated to any client or matter for which funds were held in trust, Attorney Hammis violated former SCR 20:1.15(b)(3).[13]

**Count Twenty-Seven:** By disbursing funds from the trust account on at least four occasions that resulted in negative balances on the individual client ledgers recording funds held in trust with respect to four different clients or matters, Attorney Hammis violated former SCR 20:1.15(f)(1)b.[14]

---

[12] Former SCR 20:1.15(f)(1)d. provided:

Deposit slips shall identify the name of the lawyer or law firm, and the name of the account. The deposit slip shall identify the amount of each deposit item, the client or matter associated with each deposit item, and the date of the deposit. The lawyer shall maintain a copy or duplicate of each deposit slip. All deposits shall be made intact. No cash, or other form of disbursement, shall be deducted from a deposit. Deposits of wired funds shall be documented in the account's monthly statement.

[13] Former SCR 20:1.15(b)(3) provided: "No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[14] Former SCR 20:1.15(f)(1)b. provided:

(continued)

14

**M.V.**

¶26 On May 28, 2010, M.V. hired Attorney Hammis to represent her in her role as the personal representative of an estate. M.V. paid Attorney Hammis $2,000 in advanced fees and signed a written fee agreement. The fee agreement did not authorize Attorney Hammis to use the estate's funds to pay his billings without court approval.

¶27 On August 30, 2010, a Dane County Circuit Court judge named R.B. as special administrator of the estate. On October 4, 2010, Attorney Hammis deposited $150,000 of estate funds into his trust account. On October 5, 2010, Attorney Hammis transferred $1,000 of estate funds out of his trust account for legal fees. On October 8, 2010, Attorney Hammis sent the special administrator's attorney a check for $145,000 representing the estate's funds. An invoice for Attorney Hammis' representation of M.V. dated February 28, 2011, indicated that Attorney Hammis used the $5,000 as a "reserve fee." Attorney Hammis' client ledger indicates that on February

A subsidiary ledger shall be maintained for each client or 3rd party for whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

15

28, 2011, he transferred the remaining $4,000 of estate funds out of his trust account.

¶28 M.V. died on November 16, 2011. On December 7, 2011, D.E. was appointed as special administrator of M.V.'s estate. D.E. hired Attorney Michael Rumpf to represent her. On December 7, 2011, Attorney Rumpf wrote to Attorney Hammis requesting, among other things, that he transfer to Attorney Rumpf any estate funds held in trust, and provide an accounting of those funds. On December 22, 2011, Attorney Hammis transferred his M.V. file to Attorney Rumpf and signed an order for substitution. He did not provide Attorney Rumpf with any billing information, work product, or an accounting of funds.

¶29 Over the next few months, Attorney Rumpf sent Attorney Hammis several requests for the entire M.V. file. Attorney Hammis often did not substantively respond, and he did not give Attorney Rumpf any additional documents.

¶30 On February 28, 2012, D.E. filed a grievance against Attorney Hammis with the OLR. From August through November of 2012, the OLR wrote Attorney Hammis several letters asking him to respond to the grievance, but Attorney Hammis provided no substantive responses.

¶31 On March 13, 2013, the OLR moved this court for an order to show cause why Attorney Hammis' license should not be suspended for failing to cooperate with its investigation of the D.E. grievance and other matters. This court issued an order to show cause on March 15, 2013. On April 2, 2013, Attorney Hammis responded to the OLR's information requests. As a result, the

16

OLR moved to withdraw its motion for a license suspension, and this court dismissed the order to show cause. In April and June 2013, the OLR wrote and personally served Attorney Hammis with requests for more information about the $5,000 estate disbursements, but Attorney Hammis failed to respond.

¶32 By virtue of entering into the stipulation, Attorney Hammis pled no contest to the following counts of misconduct concerning the estate:

> **Count Twenty-Eight:** By withdrawing estate funds from his trust account as "reserve fees" to apply to his legal bill, without notice to and consent from his client or other parties with a potential interest in the funds, Attorney Hammis violated former SCR 20:1.15(b)(1).

> **Count Twenty-Nine:** By withdrawing estate funds from his trust account as a "reserve fee" to apply to his legal bill, without notice to and consent from his client or other parties with a potential interest in the funds, Attorney Hammis violated former SCR 20:1.15(g)(1).[15]

---

[15] Former SCR 20:1.15(g)(1) provided:

> At least 5 business days before the date on which a disbursement is made form a trust account for the purpose of paying fees, with the exception of contingent fees or fees paid pursuant to a court order, the lawyer shall transmit to the client in writing all of the following:

> a. an itemized bill or other accounting showing the services rendered;

> b. notice of the amount owed and the anticipated date of the withdrawal; and

> c. a statement of the balance of the client's funds in the lawyer trust account after the withdrawal.

17

**Count Thirty:** By failing to provide a copy of the entire M.V. file, including billing statements, accountings and work product, to the successor representative of his client in the estate matter and her counsel, Attorney Hammis violated SCR 20:1.16(d).[16]

**Count Thirty-One:** By failing to timely respond to the OLR's initial grievance investigation of D.E.'s grievance and submitting a response to the OLR only after the Supreme Court of Wisconsin issued an Order to Show Cause why his license should not be temporarily suspended for failing to cooperate, Attorney Hammis violated SCR 22.03(2).

**Count Thirty-Two:** By failing to respond to the OLR's request for additional information in its investigation of D.E.'s grievance, Attorney Hammis violated SCR 22.03(6).

### R.W.

¶33 On November 3, 2011, R.W. hired Attorney Hammis to draft a deed and a will. In May of 2012, Attorney Hammis drafted the deed and R.W. signed it. In the following months, Attorney Hammis was unresponsive to R.W.'s messages. R.W. filed a grievance against Attorney Hammis in September 2012. Attorney Hammis failed to respond to the OLR's requests to provide information about the grievance. Attorney Hammis did fax a

---

[16] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

response to the OLR on December 27, 2012. That same day, Attorney Hammis emailed R.W. asking for his and his late wife's social security numbers for a real estate transfer form. This was Attorney Hammis' first communication to R.W. in several months. R.W. sent Attorney Hammis the information.

¶34 As of April of 2013, Attorney Hammis had not filed R.W.'s deed. In May and June of 2013, the OLR wrote to Attorney Hammis asking him to provide additional information about his representation of R.W. Attorney Hammis failed to respond.

¶35 By entering into the stipulation, Attorney Hammis pled no contest to the following counts of misconduct with respect to his representation of R.W.:

> **Count Thirty-Three:** By failing to timely file the quit claim deed on his client's behalf, after the deed had been executed and all necessary information had been received, Attorney Hammis violated SCR 20:1.3.

> **Count Thirty-Four:** By failing to respond to his client's inquiries regarding the status of his matter, and by failing to initiate status updates to his client, including his purported need for additional information from the client before being able to complete the representation, Attorney Hammis violated SCR 20:1.4(a)(3)[17] and (4).[18]

> **Count Thirty-Five:** By failing to respond to the OLR's request for additional information in its R.W. grievance investigation, Attorney Hammis violated SCR 22.03(6).

---

[17] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

[18] SCR 20:1.4(a)(4) provides: "A lawyer shall promptly comply with reasonable requests by the client for information."

19

**R.G.**

¶36 On November 4, 2011, R.G. spoke with Attorney Hammis about setting up a limited liability company (LLC) and drafting related documents. Attorney Hammis said he could do this work within a week. On November 7, 2011, R.G. hired Attorney Hammis, signed a fee agreement, and paid him $400 to set up the LLC. In November and December of 2011, R.G. sent Attorney Hammis several emails asking for updates on drafting the LLC documents. Attorney Hammis responded occasionally to the communications, but never provided an update.

¶37 On December 22, 2011, R.G. emailed Attorney Hammis, terminating his representation and requesting that he refund her fees. Attorney Hammis failed to respond. In March of 2012, R.G. filed a grievance against Attorney Hammis with the OLR. In April 2012 she sued him in small claims court, seeking damages based on his failure to return her fees.

¶38 On April 30, 2012, Attorney Hammis represented that his notary commission was valid when he notarized a document submitted in R.G.'s lawsuit. In fact, Attorney Hammis had not been a licensed notary since January 20, 2011, when the Secretary of State revoked his notary commission.

¶39 On July 13, 2012, Attorney Hammis sent the OLR a response to R.G.'s grievance. As part of the response he sent an "Operating Agreement" and "Contribution Agreement" for the LLC and submitted a case log representing he had drafted the agreements on December 1, 2011. In fact, Attorney Hammis did not draft the agreements until after R.G. had filed her

20

grievance.  R.G. obtained a judgment against Attorney Hammis in April 18, 2013.

¶40 Based on his entry into the stipulation, Attorney Hammis pled no contest to the following counts of misconduct with respect to his representation of R.G.:

**Count Thirty-Six:**  Having been hired on November 7, 2011 to prepare LLC documents for R.G., and at that time creating the expectation that the work could be completed in a matter of days or a week, by failing to produce the LLC documents and provide them to R.G. as of December 22 and 27, 2011, when R.G. provided email notice of the termination of representation and requested the return of her advanced fee in the matter, Attorney Hammis violated SCR 20:1.3.

**Count Thirty-Seven:**  By failing to respond to multiple email inquiries from R.G. in December 2011, in which R.G. sought updates concerning the status of the LLC work, Attorney Hammis violated SCR 20:1.4(a)(4).

**Count Thirty-Eight:**  Having failed to produce the LLC papers and provide them to R.G. as of the December 22 and 27, 2011 termination emails, in which R.G. sought a refund, and having stated in a January 4, 2012 email to R.G., "I have submitted the file and the instruction to my bookkeeper to remit refund of your advance fee per your request," by thereafter failing to refund R.G., Attorney Hammis violated SCR 20:1.16(d).

**Count Thirty-Nine:**  By notarizing an affidavit of mailing in a Dane County small claims action with the declaration that his notary commission was permanent, when his notary commission was in fact revoked, thereby violating Wis. Stat. § 137.01(2), Attorney Hammis violated SCR 20:8.4(c) and SCR 20:8.4(f).[19]

_____

[19] SCR 20:8.4(f) provides:  "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

**Count Forty:** Having made no mention of preparing any documents related to R.G.'s desired LLC in response to R.G.'s multiple emails, and likewise failing to mention any such purported document preparation when informing R.G. on January 4, 2012 that he had instructed his bookkeeper to refund R.G.'s advance fee payment, by then sending the OLR documents relating to an LLC, purportedly drafted on or about December 1, 2011, offered to the OLR to support his claim of compensable drafting services, when Attorney Hammis had not prepared those documents prior to R.G.'s termination of representation or as of January 4, 2012 when he promised R.G. a refund, Attorney Hammis violated SCR 22.03(6), via SCR 20:8.4(h).

### D.M.

¶41 In 2008, D.M. hired Attorney Hammis to represent her in a criminal matter. He subsequently represented her in other matters. D.M. filed a grievance against Attorney Hammis in September 2012. Attorney Hammis failed to respond to the OLR's requests for information about the grievance. In March 2013, the OLR moved this court for an order to show cause why Attorney Hammis' license should not be suspended for failure to cooperate with its investigation of D.M.'s grievance and other matters. This court issued an order to show cause on March 15, 2013. Attorney Hammis responded to the OLR's information requests and on April 3, 2013, the OLR moved to withdraw its motion. This court dismissed the motion and order to show cause the following day. In October 2013, the OLR wrote to Attorney Hammis asking for additional information about his representation of D.M. Attorney Hammis never responded.

¶42 By entering into the stipulation, Attorney Hammis pled no contest to the following counts of misconduct regarding his representation of D.M.:

22

**Count Forty-One:** By initially failing to timely respond to the OLR's investigation of D.M.'s grievance and submitting a response only after the Supreme Court of Wisconsin issued an Order to Show Cause why his license should not be temporarily suspended for failing to cooperate, Attorney Hammis violated SCR 22.03(2), enforced via SCR 20:8.4(h).

**Count Forty-Two:** By failing to respond to the OLR letter dated October 23, 2013 requesting further investigative information, Attorney Hammis violated SCR 22.03(6), enforced via SCR 20:8.4(h).

### G.T.

¶43 On August 9, 2012, G.T. hired Attorney Hammis to obtain title to an automobile and gave him several original documents. G.T. paid Attorney Hammis $500 in fees. Over the next several months, Attorney Hammis failed to respond to G.T.'s communications, except for sending G.T. one email on October 26, 2012. G.T. tried to visit Attorney Hammis' office in late October 2012 but found it locked and closed. G.T. hired another attorney who was also unable to contact Attorney Hammis.

¶44 G.T. filed a grievance against Attorney Hammis on November 7, 2012. Attorney Hammis failed to respond to the OLR's request for information about the grievance. On March 13, 2013, the OLR moved this court for an order to show cause why Attorney Hammis' license should not be suspended for failure to cooperate with its investigation of G.T. and other matters. This court ordered Attorney Hammis to show cause. Attorney Hammis responded to the OLR's information requests and in late March of 2013, he returned G.T.'s original documents and $500. This court dismissed the OLR's motion for an order to show cause based on the OLR's request.

23

¶45  By entering into the stipulation, Attorney Hammis pled no contest to the following counts of misconduct with respect to his representation of G.T.:

> **Count Forty-Three:**  By failing to return his client's original documents and return his unearned fee for approximately five months after the representation ended, Attorney Hammis violated SCR 20:1.16(d).

> **Count Forty-Four:**  By initially failing to timely respond to the OLR's investigation of G.T.'s grievance, submitting a response only after the Supreme Court of Wisconsin issued an Order to Show Cause why his license should not be temporarily suspended for failing to cooperate, Attorney Hammis violated SCR 22.03(2).

### Michigan Licensure

¶46  Attorney Hammis was admitted to practice law in Michigan, but his Michigan law license has been suspended for non-payment of dues since 2001.  From 2008 through at least 2012, Attorney Hammis represented himself in emails as an "experienced business and general practice attorney representing businesses and individuals in the State of Wisconsin and Michigan."

¶47  By entering into the stipulation, Attorney Hammis pled no contest to the following count of misconduct with respect to this representation:

> **Count Forty-Five:**  By representing himself as authorized to practice law and to represent clients in the State of Michigan in emails to A.W., representatives of an insurance company, B.D., R.G. and/or Attorney Michael Rumpf, although his Michigan law license has been continuously suspended since

February 15, 2001, Attorney Hammis violated SCR 20:7.1.[20]

### Practice in Bankruptcy Court While Suspended

¶48 On August 26, 2011, Judge Robert D. Martin suspended Attorney Hammis from practicing before the Bankruptcy Court for the Western District of Wisconsin. Attorney Hammis has not been reinstated from this suspension. In 2012, D.A. contacted Attorney Hammis for help in filing bankruptcy. D.A. did not know that Attorney Hammis had been suspended from bankruptcy practice in the Western District, where D.A. lived. D.A. contacted and met with Attorney Hammis several times in 2012 and

---

[20] SCR 20:7.1 provides:

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law; or

(c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or

(d) contains any paid testimonial about, or paid endorsement of, the lawyer without identifying the fact that payment has been made or, if the testimonial or endorsement is not made by an actual client, without identifying that fact.

25

2013 about the proposed bankruptcy. Attorney Hammis completed the forms in a bankruptcy petition for D.A.'s signature.

¶49 On December 3, 2013, Attorney Hammis personally filed D.A.'s bankruptcy petition with the Bankruptcy Court for the Western District of Wisconsin, but he informed the staff that D.A. was proceeding pro se. Attorney Hammis paid the filing fee for D.A.'s bankruptcy with a check from his law firm bank account. In January 2014, Attorney Hammis mailed D.A.'s pay advices to the bankruptcy court. On January 21, 2014, the bankruptcy trustee held a meeting of creditors in D.A.'s bankruptcy. During the hearing, D.A. gave conflicting statements about the assistance he received from Attorney Hammis. At that time, D.A. learned that Attorney Hammis had been suspended from practicing before the bankruptcy court. D.A. consulted another bankruptcy attorney and ultimately obtained a discharge of his debts.

¶50 By virtue of entering into the stipulation, Attorney Hammis pled no contest to the following counts of misconduct with respect to his representation of D.A.:

> **Count Forty-Six:** By failing to consult with D.A. on the unusual means he chose to attempt to pursue D.A.'s bankruptcy action in light of Attorney Hammis' suspension from Bankruptcy Court for the Western District of Wisconsin, including attempting to conceal Attorney Hammis' involvement with D.A.'s bankruptcy action from the Bankruptcy Court, Attorney Hammis violated SCR 20:1.4(a)(2).[21]

---

[21] SCR 20:1.4(a)(2) provides: "A lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished."

**Count Forty-Seven:** By failing to reveal to D.A. that he was suspended from practicing before the Bankruptcy Court and could not represent D.A. in a bankruptcy proceeding, Attorney Hammis violated SCR 20:1.4(a)(5).[22]

**Count Forty-Eight:** By filing D.A.'s bankruptcy petition and proceeding with the bankruptcy action while suspended from Bankruptcy Court for the Western District of Wisconsin, Attorney Hammis violated SCR 20:3.4(c).[23]

## Referee's Report

¶51 In her report and recommendation, the referee found that the OLR had met its burden to prove by clear, satisfactory, and convincing evidence that Attorney Hammis committed all of the counts of misconduct to which he pled no contest. The referee noted that virtually all of the conduct stipulated to by Attorney Hammis occurred after the OLR had filed its complaint in Attorney Hammis' first disciplinary matter. The referee said that many of the violations alleged in this case are similar to violations that occurred in Attorney Hammis' two previous disciplinary matters. The referee pointed out that Attorney Hammis stipulated to committing five violations of SCR 20:8.4(c), which would have required the OLR to prove that

---

[22] SCR 20:1.4(a)(5) provides: "A lawyer shall consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law."

[23] SCR 20:3.4(c) provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

Attorney Hammis "engaged in conduct involving dishonesty, fraud, deceit or misrepresentation." The referee said that by entering a no contest plea to each of those counts and the facts supporting the counts, Attorney Hammis waived his right to contest that those counts in fact involved fraud, misrepresentation, dishonesty, or deceit. The referee said that Attorney Hammis' argument that those counts involved mere negligence must be ignored.

¶52 The referee also noted that Attorney Hammis pled no contest to ten counts involving trust account violations under SCR 20:1.15, one count involving 56 separate prohibited transactions. The referee said, "perhaps Hammis despises the rules of trust accounting, has not learned them, or finds them too difficult to comply with, and so chooses to ignore them entirely." The referee also said "his subsequent untruthful explanations of what occurred . . . only highlight his inherent dishonesty. It is difficult to understand what lesser corrective discipline than revocation would prompt proper corrective action on his part to ensure compliance with what is required."

¶53 The referee went on to say that in this matter, as in his past disciplinary cases, Attorney Hammis developed a pattern whereby he would avoid answering or responding to the OLR's requests for information about a grievance until an order to show cause had been issued and then would avoid a license suspension by minimally responding to the OLR. The referee pointed out Attorney Hammis pled no contest to 11 counts

involving his failure to respond to the OLR's request for information. The referee said Attorney Hammis dismisses all of his violations of the duty to respond to the OLR as justified or minimal and claims little or no sanction should be imposed for those violations.

¶54 The referee said:

It seems from the current violations that Hammis has not changed his practices or his conduct found in each of the prior discipline decisions. Hammis seems to do what he wants without regard for the Supreme Court rules and when caught he asserts or implies that his violations are merely technical irregularities, a nuisance that he cannot possibly be expected to follow. At no point in his response brief did he express remorse for his transgressions, or empathy for those clients who filed complaints against him. And, he points out in his brief that many of the technical violations pled to were discovered by OLR's snooping around in his business, his files, his record keeping. . . . Hammis' argument misses the mark.

¶55 The referee concluded by saying:

Revocation should be imposed when there is little hope that an attorney will chose to modify his or her behavior to the standards required in Chapter 20. This is Hammis' third disciplinary action and involves the same rule violations, the same conduct as his other actions. Some attorneys violate the same rules Hammis has but show a genuine desire to correct their behavior, to learn new practices to prevent mishaps, and commit themselves to better communications with their clients. Hammis is not among them.

¶56 The referee said Attorney Hammis' two prior suspensions apparently did nothing to provoke any change in his law business practices. For that reason, the referee agreed with the OLR's recommendation that Attorney Hammis' license to practice law in Wisconsin should be revoked. The referee also

29

recommended, consistent with the terms of the stipulation, that Attorney Hammis be required to pay restitution to R.G. in the amount of $400, if he has not already done so.

## The Appeal

¶57 Attorney Hammis' appeal raises three issues: (1) Did the referee err in the introduction and utilization of facts and subsequent conclusions that were not stipulated by the parties? (2) Is the use of the OLR of unknown and undisclosed subpoenas and discovery with financial institutions a violation of due process? (3) Did the referee err in the recommendation that Attorney Hammis' license be revoked?

¶58 Attorney Hammis says the parties' stipulation and his no contest plea and separate stipulation of facts "were a balanced and negotiated decision made by the parties to assure that the format of the briefing and arguments of the parties would follow a series of facts that were the result of the agreements of the parties." He says the referee's report made reference to "multiple very specific incorrect or non-stipulated facts." He accuses the referee of stepping outside the stipulation of facts reached by the parties. He says "the degree and damage to such stepping out is not completely determinable."[24] He says the referee's reliance on non-stipulated facts should be considered the "fruit of the poisonous tree."

---

[24] For example, Attorney Hammis complains that the referee referred to details of the misconduct underlying Attorney Hammis' earlier disciplinary proceedings.

30

¶59 Attorney Hammis notes that SCR 22.03(8) provides that the OLR director may subpoena the respondent and others and compel any person to produce pertinent books, papers and documents. He argues this rule is contrary to Wis. Stat. § 805.07 which outlines the process and procedure for the service and notification to parties of subpoenas. He says, "once again the 'fruit of this poisonous tree' are significant. . . ."

¶60 Most significantly, Attorney Hammis argues that the referee erred in adopting the OLR's recommendation that Attorney Hammis' law license should be revoked. He argues that his misconduct does not demonstrate a pattern of intentionally inflicted harm, malfeasance or financial malfeasance to any of his clients. He says without question he did make mistakes that were in violation of supreme court rules, but he attempts to paint the misconduct as not being all that serious.

¶61 Contrary to the referee's conclusion that there is little hope Attorney Hammis will modify his behavior and that he has shown little remorse for his actions, Attorney Hammis argues he has acknowledged his errors and mistakes. Rather than revocation of his license, he says a one-year suspension would be an appropriate sanction. In the alternative, he asks that the entire referee report be set aside and a new referee appointed "and that counts connected to the issued subpoenas, [R.B.] and the Trust account issues are duly dismissed."

¶62 The OLR takes the position that this court should endorse the referee's report, revoke Attorney Hammis' license,

and order him to pay $400 restitution to R.G. The OLR argues that the referee's findings of fact are supported by the record and are not clearly erroneous. The OLR says none of the facts that Attorney Hammis argues were outside of the parties' stipulation are material to the misconduct. The OLR says, "the facts which Hammis identifies on appeal as erroneous or problematic were either immaterial or properly cited in the referee's report."

¶63 The OLR says this court should reject Attorney Hammis' theory that the documents subpoenaed by the OLR "poisoned" the case. The OLR says while disciplinary proceedings generally follow the rules of civil procedure, OLR investigations do not, and the supreme court rules do not require the OLR to notify a respondent when it subpoenas documents during a confidential investigation.

¶64 As to the appropriate sanction, the OLR says revocation is warranted. It points out Attorney Hammis' misconduct involves multiple client matters and 40 counts of misconduct ranging from abandonment of clients, to misleading clients, to false notarization, to practicing bankruptcy law while suspended, to serious trust account malfeasance, and multiple willful failures to cooperate with OLR investigations into his conduct. The OLR says Attorney Hammis' misconduct reaches almost every aspect of practicing law and shows a pervasive pattern of disregarding the Rules of Professional Conduct.

¶65 The OLR also notes that the misconduct at issue here encompass the time frame from 2008 to 2012. The OLR notes that frequently Attorney Hammis would resume his obligations to his clients only after the OLR's involvement following the filing of a grievance. The OLR says the referee correctly noted that the misconduct at issue here is similar to the misconduct for which Attorney Hammis has previously been disciplined.

¶66 A referee's findings of fact are affirmed unless they are found to be clearly erroneous. This court reviews de novo the referee's conclusions of law. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. This court determines the appropriate level of discipline given the particular facts of the case, independent of the referee's recommendation but benefitting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶67 By entering into the stipulation and by pleading no contest, Attorney Hammis has admitted the factual basis underlying the 40 counts of misconduct. The only legitimate challenge he can lodge to the referee's report is the recommended sanction of revocation. It was appropriate for the referee to note similarities between the misconduct at issue here and the misconduct for which Attorney Hammis was previously disciplined, which led her to conclude he had learned nothing from his previous mistakes. Similarly, Attorney Hammis' complaints about the OLR's subpoenaing his bank records is

33

unavailing since he has admitted the trust account and other banking violations.

¶68 As to the appropriate level of discipline, the facts alleged in the amended complaint, to which Attorney Hammis pled no contest, show a clear pattern of neglect of his clients' needs and objectives and an utter disregard for his obligations as an attorney. His misconduct was not an isolated occurrence but occurred in nine separate client representations over the course of years.

¶69 We recognize, as the dissent points out, that the misconduct at issue here occurred prior to Attorney Hammis' 2015 suspension. The complaint in this matter was filed in 2014 and the amended complaint was filed in 2015. Some of the delay in the completion of this case was caused by Attorney Hammis' failure to cooperate in the OLR's investigations as well as by his motion practice and multiple extension motions. While it may have been preferable for this matter to have been brought to conclusion sooner, the passage of time since Attorney Hammis' most recent misconduct in no way excuses or mitigates the misconduct.

¶70 While Attorney Hammis portrays himself as remorseful and says he has accepted responsibility for his transgressions, some of his statements at oral argument call those assertions into question. Attorney Hammis' representation of R.G. is illustrative. R.G. retained Attorney Hammis in November of 2011 and paid him $400. Attorney Hammis never did the work. R.G. terminated his representation in December of 2011 and demanded a

refund of the $400. R.G. filed a grievance in March of 2012. In April of 2013 she obtained a small claims judgment against him. In September of 2016, Attorney Hammis stipulated that he owed R.G. $400 in restitution. When asked at oral argument why he had not paid R.G. the $400, Attorney Hammis replied that he was "waiting for a court order." The small claims court rendered a judgment in favor of R.G. six years ago, and Attorney Hammis stipulated two and a half years ago that he needed to pay R.G. the $400. The fact that this modest sum remains unpaid in 2019 belies Attorney Hammis' claim that he is remorseful and has fully accepted responsibility for his actions.

¶71 Revocation is the most serious sanction that may be imposed under our attorney disciplinary system and it is reserved for the most egregious cases. Although Attorney Hammis' misconduct was undeniably very serious, we are not convinced that it rises to the level of warranting revocation. We note that the misconduct at issue here occurred between 2008 and 2012. Attorney Hammis stated at oral argument that he stepped away from his general legal practice in 2011 or 2012. Since that time he has performed some legal work for a company with which he has a long-term relationship. He says he currently is representing a defendant in one felony criminal case.

¶72 While no two disciplinary matters are identical, we find this case to be somewhat similar to In re Disciplinary Proceedings Against Bryant, 2015 WI 7, 360 Wis. 2d 625, 858 N.W.2d 681. Attorney Bryant stipulated to a three-year

35

suspension for 37 counts of misconduct including one violation of SCR 20:8.4(c) and multiple counts of failing to take meaningful action or advance his clients' interests, failing to properly hold unearned fees and advanced payment of fees in trust, converting client funds to pay himself attorney's fees, and failing to cooperate in the OLR's investigations. Attorney Bryant had a previous consensual private reprimand.

¶73 In addition, this case is somewhat similar to In re Disciplinary Proceedings Against Dahle, 2015 WI 29, 361 Wis. 2d 430, 862 N.W.2d 582. Attorney Dahle committed 55 counts of misconduct, including borrowing or taking some $400,000 from clients without regard to conflict of interest restrictions and requirements. Attorney Dahle had no prior disciplinary history. We suspended her law license for two years and six months. Although the amount of money converted or mishandled by Attorney Hammis is much less, he does have a prior disciplinary history and he repeatedly failed to respond to the OLR's request for information after his clients had filed grievances and only when served with an order to show cause and faced with the possible suspension of his law license did he finally respond to the OLR's inquiries. Under the unique facts of this case, we conclude that a three-year suspension of Attorney Hammis' license to practice law in Wisconsin is an appropriate sanction for his misconduct.

¶74 We also deem it appropriate to impose various conditions upon Attorney Hammis' resumption of the practice of law, in the event his law license is reinstated. Those

conditions include practicing law under the supervision of a legal mentor approved by the OLR for a period of two years after his license is reinstated; a prohibition upon ever maintaining a trust account; and limiting his practice to performing legal work for his corporate client and assisting family and friends in legal matters.  We also order Attorney Hammis to make restitution in the amount of $400 to R.G., and we order him to pay the full costs of this proceeding.

¶75  IT IS ORDERED that the license of James Edward Hammis to practice law in Wisconsin is suspended for a period of three years, effective July 3, 2019.

¶76  IT IS FURTHER ORDERED that James Edward Hammis shall pay restitution of $400 to R.G.

¶77  IT IS FURTHER ORDERED that within 60 days of the date of this order James Edward Hammis shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $13,160.22 as of March 4, 2019.

¶78  IT IS FURTHER ORDERED that the restitution to R.G. specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶79  IT IS FURTHER ORDERED that, as conditions of reinstatement of his license to practice law in Wisconsin, James Edward Hammis be subject to the following:  (1) practicing law under the supervision of a legal mentor approved by the Office of Lawyer Regulation for a period of two years; (2) a prohibition upon ever maintaining a trust account; and (3)

37

limiting his practice to performing legal work for his corporate client and assisting family and friends in legal matters.

¶80  IT IS FURTHER ORDERED that James Edward Hammis shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶81 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement.  See SCR 22.28(2).

¶82 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting)*. Attorney Hammis stated, both in his brief and at oral argument, that in 2012 he virtually discontinued his legal practice, with the exception of occasionally assisting family members and friends—usually without charge—and performing three to five hours of legal work per month for a longtime corporate client. He no longer has a trust account and does not make his living from practicing law. He stated he has no intention of expanding his legal practice in the future. He has expressed remorse for his admitted misconduct and questions what more he could have done in the past seven years to alleviate concerns that his extremely limited practice would be a threat to his clients or the legal profession.

¶83 The majority acknowledges that all of the misconduct at issue here occurred prior to 2015, when Attorney Hammis' license was suspended for 90 days, and some of the misconduct occurred prior to the four-month suspension imposed in 2011. Indeed, the complaint in this matter was filed nearly five months before the court issued its order imposing the 2015 suspension. The serial nature of the OLR's complaints against Attorney Hammis appears to expose a flaw in Wisconsin's attorney regulatory system. If the misconduct counts at issue in this case and the counts at issue in the case resulting in the 90-day suspension had been prosecuted at the same time, the resulting discipline may well have been less than the three years and three months that was imposed in the two separate cases. In spite of the fact that Attorney Hammis has virtually not

1

practiced law since 2012 and has committed no misconduct since 2015, he is nonetheless being suspended for an additional three years in 2019 for misconduct that occurred long ago. While the passage of time should not excuse misconduct, the majority fails to adequately justify why a three-year suspension is warranted given that the previous suspensions were for four months and 90 days and there has been no misconduct in the past four years.

¶84 The Office of Lawyer Regulation Procedures Review Committee recently filed a series of administrative rule petitions dealing with various aspects of Wisconsin's attorney regulatory system. The Committee was tasked with reporting to this court any recommendations that would increase the efficiency, effectiveness, and fairness of the OLR process. In my view, this case raises issues that warrant the court's review when it takes up the rules petitions.

¶85 Given the facts and procedural history of this case, I am unable to conclude that a three-year suspension is warranted. Therefore, I respectfully dissent.

¶86 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.